\*\* E-filed on 6/9/05 \*\*

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| SUN MICROSYSTEMS, INC., et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>SEAORIA SIGNARS LEMA, et al.,<br><br>        Defendants. | Case Number C 04-04968 JF<br><br>ORDER (1) GRANTING PLAINTIFFS' MOTION TO DEPOSIT BENEFITS WITH THE COURT, (2) GRANTING PLAINTIFFS' MOTION FOR DISCHARGE OF STAKEHOLDER IN INTERPLEADER ACTION, AND (3) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS<br><br>[Docket Nos. 19 and 22] |

   Plaintiffs Sun Microsystems, Inc. ("Sun") and Sun Microsystems, Inc. Tax Deferred Retirement Savings Plan ("Plan") (collectively "Plaintiffs") move to (1) deposit benefits with the Court, (2) be discharged from liability in connection with this interpleader action, and (3) recover their attorney's fees and costs. Plaintiffs' motions to deposit benefits and for discharge are unopposed. All Defendants except Michael-Anthony Lawrence Lema oppose Plaintiffs' motion

for attorney's fees and costs.[1] The Court has read the moving and responding papers and has considered the oral arguments of counsel presented on May 27, 2005. For the reasons set forth below, the motion to deposit benefits will be granted, the motion for discharge will be granted, and the motion for attorney's fees and costs will be granted in part and denied in part.

## I. BACKGROUND

Plaintiffs brought this action in interpleader pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") and Federal Rule of Civil Procedure 22 ("Rule 22")[2] to determine who among the seven Defendants—Seaoria Signars Lema ("Seaoria"), Michael-Anthony Lawrence Lema ("Michael-Anthony"), David Thomas Lema ("David"), Gabrielle Lynn Lema ("Gabrielle"), Paul Philip Lema ("Paul"), Paula Sarah Lema ("Paula"), and Tomica Ann Parham-Lema ("Tomica")—is or are the proper beneficiary or beneficiaries of Michael H. Lema's account under the Plan.

Michael H. Lema ("Decedent") was a participant in the Plan and was eligible to designate a beneficiary or beneficiaries to receive, in the event of his death, payment of his Plan benefits that were not distributed prior to his death. When Decedent enrolled in the Plan in February 1989, he listed his wife, Seaoria, and his six children, Michael-Anthony, David, Gabrielle, Paul, Paula, and Tomica, as equal beneficiaries on his enrollment form.[3] The terms of the Plan required

---

[1] Seaoria Signars Lema was the only Defendant to file any response to Plaintiffs' motions. Defendants David Thomas Lema, Gabrielle Lynn Lema, Paul Philip Lema, Paula Sarah Lema, and Tomica Ann Parham-Lema were represented by counsel at the hearing but failed to file any opposition to the instant motions, because they did not substitute counsel for themselves as pro se litigants until several days before the hearing (in the case of David, Gabrielle, Paul, and Tomica) or several days after the hearing (in the case of Paula). To date, Defendant Michael-Anthony Lawrence Lema has not filed an answer or otherwise appeared in this action.

[2] Rule 22 interpleader "provides a process by which a party may 'join all other claimants as adverse parties when their claims are such that the stakeholder may be exposed to multiple liability.'" *Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1033 (9th Cir. 2000).

[3] All parties appear to be proceeding under the belief that Decedent's enrollment form listed *only* his six children as beneficiaries. However, the Court notes that Seaoria also is listed as a beneficiary in the same part of the form where Michael-Anthony, David, Gabrielle, Paul, Paula,

2

that Decedent's spouse give her written consent, which was to be witnessed by a Plan representative or notary public, in order for Decedent's designation of persons other than his spouse as beneficiaries to be valid. Plaintiffs assert that, while the enrollment form appears to bear Seaoria's signature, her signature was neither notarized nor witnessed by a Plan representative, and thus, under the terms of the Plan, the beneficiary designation therein is invalid. However, the invalidity of the designation does not appear to have been discovered until at least July 2004.[4]

More than twelve years later, in July 2001, Decedent attempted to designate the Michael Henry Lema Trust ("Lema Trust") as the beneficiary of his Plan benefits using Sun's online Plan administration system. Plaintiffs assert that when he did so, the system generated a notification informing Decedent that, in order for his designation to be valid, he needed to provide the Plan with written spousal consent to the beneficiary designation. Plaintiffs also assert that the Plan never received such consent from Seaoria, and thus, under the terms of the Plan, this beneficiary designation is invalid as well. It appears that the invalidity of this second designation was not discovered until at least March 2004.

Decedent died on November 14, 2001. At the time of his death, he had benefits under the Plan that had not yet been distributed to him. As of April 7, 2005, the value of the benefits was $127,796.37. The benefits currently are held in a money market fund within the Plan, where their value fluctuates.

On January 31, 2003, the Plan received from Seaoria a "Distribution Request Form" in which she requested that the Plan distribute Decedent's benefits to her. Plaintiffs assert that, throughout 2003, the Plan communicated with Seaoria and the executor of the Lema Trust regarding which of them was the proper party to receive Decedent's benefits. Plaintiffs further

---

and Tomica are listed as beneficiaries.

[4] Seaoria's counsel has submitted a declaration that he called Plaintiffs' attention to the potential invalidity of this designation in August 2004.

assert that, in December 2003, the Plan received a "Verified Petition of Trustee for Instructions and Order Directing Distribution of Personal Property" ("Verified Petition") in a case entitled *In the Matter of the Michael Henry Lema Trust Dated February 27, 2001 as Amended*, which included a copy of the Lema Trust document and its amendments. The "Second Amendment" to the Lema Trust document stated that Seaoria was to "receive full distribution of [Decedent's] Sun 401K account."[5] According to Plaintiffs, the Verified Petition alleged that Decedent's Plan benefits should be distributed to Seaoria under the terms of the "Second Amendment" to the Lema Trust document. However, Plaintiffs assert that, in March 2004, the Plan informed Seaoria that Decedent's designation of the Lema Trust as his beneficiary was not accompanied by the requisite spousal consent and that, unless she could furnish proof of spousal consent, Decedent's Plan benefits would be distributed in accordance with the designation in his February 1989 enrollment form.[6]

Plaintiffs assert that, in June 2004, the Plan informed Decedent's six children listed on his enrollment form that they had a right to claim equal portions of Decedent's benefits, and it provided them with "Distribution Request Forms" by which they could submit their claims.[7] In June and July 2004, the Plan received claims from five of the six children: Michael-Anthony, David, Gabrielle, Paul, and Paula. However, on August 31, 2004, after the Plan had concluded

---

[5] Seaoria has submitted an unauthenticated document entitled "Second Amendment to the Michael Henry Lema Trust" in support of her assertion that Decedent amended the Lema Trust document to name her as the "sole beneficiary of the Trust's right to the Benefits." Seaoria's Opp'n at 4 & Ex. A.

[6] The factual allegations in this paragraph appear in the First Amended Complaint. Plaintiffs have submitted no evidence supporting these allegations, with the exception of a copy of Seaoria's "Distribution Request Form." The Court includes the allegations in order to provide a fuller factual background. However, these particular matters have not materially influenced the Court's rulings on the instant motions, and thus the absence of evidentiary support is of no import.

[7] Like the factual allegations in the preceding paragraph, the allegations in this sentence appear in the First Amended Complaint and are not supported by evidence submitted for purposes of the instant motions. *See supra* note 6.

4

1  that Decedent's beneficiary designation in his enrollment form was invalid, it informed
2  Decedent's six children of both that invalidity and Seaoria's right, as Decedent's spouse, to
3  receive the full amount of benefits in the absence of a valid beneficiary designation.[8] In the same
4  letter, the Plan also provided Decedent's children with an opportunity to release their claims to
5  the benefits by September 30, 2004, in order to avoid an interpleader action. Decedent's children
6  have not agreed to release their claims. On November 23, 2004, Plaintiffs commenced this
7  lawsuit.[9]

## II. DISCUSSION

**A.     Motion to Deposit Benefits with the Court**

Plaintiffs move to deposit the disputed Plan benefits in the Court's registry pursuant to Federal Rule of Civil Procedure 67 ("Rule 67") pending the outcome of this interpleader action so that they may obtain a discharge of liability. Rule 67 provides that, "[i]n an action in which any part of the relief sought is . . . the disposition of a sum of money . . . , a party, upon notice to every other party, and by leave of court, may deposit with the court all or any part of such sum or thing." Fed. R. Civ. P. 67. While depositing the disputed funds in the Court's registry is not a jurisdictional requirement for Rule 22 interpleader, as it is for statutory interpleader, the Court has discretion to allow such a deposit. *See Gelfgren v. Republic Nat'l Life Ins. Co.*, 680 F.2d 79, 81-83 (9th Cir. 1982). Having received no opposition to Plaintiffs' motion to deposit the disputed benefits in the Court's registry and finding no reason to deny it, the Court will GRANT this motion.

//
//

---

[8] The Plan provides that, in the absence of a valid beneficiary designation at the time of the participant's death, the beneficiary "shall be the following person or persons living on the date of distribution in descending order of priority: (i) the Participant's spouse, or (ii) the Participant's children, in equal shares."

[9] The operative complaint is the First Amended Complaint, which was filed on December 2, 2004.

5

Case No. C 04-04968 JF
ORDER (1) GRANTING PLAINTIFFS' MOTION TO DEPOSIT BENEFITS WITH THE COURT, (2) GRANTING PLAINTIFFS' MOTION FOR DISCHARGE OF STAKEHOLDER IN INTERPLEADER ACTION, AND (3) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS (JFLC1)

**B.      Motion for Discharge and Permanent Injunction**

Plaintiffs next move for an order (1) discharging them from further liability to Defendants with respect to Decedent's benefits under the Plan and (2) permanently enjoining Defendants from bringing claims against them arising from Decedent's participation in the Plan. The United States Court of Appeals for the Ninth Circuit has explained that

> [i]nterpleader is a valuable procedural device for ERISA plans who are confronted with conflicting multiple claims upon the proceeds of an individual's benefit plan. A plan in this position risks defending against multiple lawsuits brought by the adverse claimants. Interpleader provides a way out of this quandary, allowing the plan to petition the court to sort out the conflicting claims. Thus, the interpleader plaintiff effectively disclaims any position as to which of the claimants is entitled to the fund.

*Trs. of the Dirs. Guild of Am.–Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 426 (9th Cir. 2000) (internal citation omitted). In the context of ERISA, the *Tise* court recognized that the stakeholder properly may move for discharge from liability and dismissal from the interpleader action after depositing the disputed funds in the district court's registry. *See id.* at 426-27 (observing that an interpleader plaintiff's "[c]ompensable expenses" include the cost of "preparing an order discharging the plaintiff from liability and dismissing it from the action"); *see also* 28 U.S.C. § 2361 (authorizing district courts to hear and determine interpleader actions and to discharge the interpleader plaintiff from further liability). Here, Plaintiffs have acknowledged their obligation to pay Decedent's Plan benefits to the proper beneficiary or beneficiaries, do not claim any entitlement to the benefits themselves, and have expressed indifference as to which Defendant(s) eventually receive(s) the benefits. Defendants have not opposed Plaintiffs' motion for discharge. Accordingly, Plaintiffs' motion for discharge from further liability to Defendants with respect to Decedent's Plan benefits will be GRANTED, and the discharge shall be effective following Plaintiffs' deposit of the benefits in the Court's registry.

In addition to authorizing district courts to hear and determine interpleader actions and to discharge the interpleader plaintiff from further liability, 28 U.S.C. § 2361 gives district courts the authority to issue a permanent injunction restraining the claimants from instituting or

6

prosecuting any proceeding in any state or federal court affecting the property involved in the interpleader action and to "make all appropriate orders to enforce [their] judgment." 28 U.S.C. § 2361. Defendants have presented—and the Court finds—no reason for denying Plaintiffs' request for a permanent injunction restraining Defendants from bringing claims against them arising from Decedent's participation in the Plan. Accordingly, Plaintiffs' motion for a permanent injunction will be GRANTED.

### C.     Motion for Attorney's Fees and Costs

Finally, Plaintiffs move for an award of the reasonable attorney's fees and costs they have incurred in preparing and filing the interpleader action, serving the complaint, bringing the instant motions, and communicating with Defendants and their counsel. Courts generally have discretion to award attorney's fees and costs to a disinterested stakeholder in an interpleader action. *See Abex Corp. v. Ski's Enters., Inc.*, 748 F.2d 513, 516 (9th Cir. 1984); *Tise*, 234 F.3d at 426 (committing award of attorney's fees in interpleader action to "sound discretion" of district court); *Gelfgren*, 680 F.2d at 81 (stating that award of costs to stakeholder in interpleader action is in court's discretion). The rationales for awarding the stakeholder attorney's fees "for the services of his attorneys in interpleading" are that the stakeholder has "benefited the claimants by promoting early litigation on ownership of the fund, thus preventing dissipation," and that the stakeholder "should not have to pay attorney fees in order to guard himself against the harassment of multiple litigation." *Schirmer Stevedoring Co. v. Seaboard Stevedoring Corp.*, 306 F.2d 188, 193-94 (9th Cir. 1962). Courts have awarded stakeholders their attorney's fees incurred in preparing and filing the complaint in interpleader, obtaining service of process on the claimants, and securing issuance of court orders restraining further prosecution against the stakeholder and dismissing the stakeholder from the action. *See id.* at 194; *Tise*, 234 F.3d at 426-27.

Because the scope of compensable expenses is limited, awards of attorney's fees to disinterested interpleader plaintiffs typically are "modest." *Tise*, 234 F.3d at 427 (affirming reduction of fee award where the stakeholder litigated the merits of the adverse parties' claims to

7

Case No. C 04-04968 JF
ORDER (1) GRANTING PLAINTIFFS' MOTION TO DEPOSIT BENEFITS WITH THE COURT, (2) GRANTING PLAINTIFFS' MOTION FOR DISCHARGE OF STAKEHOLDER IN INTERPLEADER ACTION, AND (3) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS
(JFLC1)

the fund rather than merely litigating on the interpleader itself). The Court has discretion to award attorney's fees from the interpleaded fund or to assess some or all of the amount against any or all of the claimants. *See Schirmer Stevedoring*, 306 F.2d at 195. When attorney's fees are paid from the interpleaded fund, "there is an important policy interest in seeing that the fee award does not deplete the fund at the expense of the party who is ultimately deemed entitled to it." *Tise*, 234 F.3d at 427.

At the time Plaintiffs filed the instant motions, they claimed to have incurred $15,287.50 in attorney's fees for "commencing this interpleader action and filing the motions necessary for their discharge of liability" and $798.71 in costs for filing and serving the complaint. Phillips Decl. ¶¶ 23-24. They assert that the rates of their counsel, Trucker Huss, are within the range of fees charged for similar work in the San Francisco Bay Area. *See* Phillips Decl. ¶ 21. The invoices submitted in support of their motion cover legal work and expenses from October 1, 2004, almost two months before Plaintiffs commenced this action, through March 21, 2005. *See* Phillips Decl., Ex. E. Thus, Plaintiffs have requested a total award of $16,086.21 in attorney's fees and costs.[10]

Seaoria states that she does not object in principle to the deduction of reasonable attorney's fees and costs from Decedent's Plan benefits. Her opposition to Plaintiffs' motion is based on her argument that, should she ultimately prevail in this action, it would be unfair to assess the full amount of attorney's fees and costs against the interpleaded fund for two reasons. First, she asserts that over half of Plaintiffs' attorney's fees and costs are attributable to their unsuccessful efforts to serve Michael-Anthony with the complaint and other documents over the course of several months. As detailed in Plaintiffs' March 21, 2005, ex parte application for an order to serve the summons on Michael-Anthony by publication and for an extension of time for

---

[10] Plaintiffs did not update these figures in their reply brief or at the hearing. The Court's Order therefore will be based upon the only figures provided.

8

Case No. C 04-04968 JF
ORDER (1) GRANTING PLAINTIFFS' MOTION TO DEPOSIT BENEFITS WITH THE COURT, (2) GRANTING PLAINTIFFS' MOTION FOR DISCHARGE OF STAKEHOLDER IN INTERPLEADER ACTION, AND (3) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS
(JFLC1)

service on Michael-Anthony,[11] these efforts included (1) four unsuccessful attempts to serve Michael-Anthony personally between December 14, 2004, and December 18, 2004, at the address in Texas that he had provided on his July 27, 2004, "Distribution Request Form,"[12] (2) unsuccessful attempts to obtain Michael-Anthony's contact information from his sisters Paula and Gabrielle in January 2005, (3) an unsuccessful Internet search for Michael-Anthony's address, (4) an unsuccessful attempt in February 2005 to obtain a waiver of service of the summons from Michael-Anthony by sending the requisite documents and forms to his Texas address via FedEx, which forms were not returned, (5) sending copies of the summons and First Amended Complaint to Michael-Anthony's Texas address via certified mail in March 2005,[13] and (6) additional unsuccessful searches for Michael-Anthony's address and telephone number in March 2005.

By comparing Plaintiffs' description of these efforts in their ex parte application with the invoices they submitted in support of the instant motion, the Court has calculated the attorney's fees generated by these efforts, including the preparation and filing of the ex parte application for service by publication, to be $8,043.75.[14] In addition, Plaintiffs appear to have paid $105.00 to Professional Civil Process for its attempts to serve Michael-Anthony and obtain his contact information in January and March 2005. This total of $8,148.75 comprises just over fifty percent

---

[11] The Court granted Plaintiffs' ex parte application on March 29, 2005.

[12] A search through the Texas Department of Motor Vehicles confirmed that a car parked in the driveway during two of the four service attempts was registered to Michael-Anthony.

[13] None of the correspondence sent to Michael-Anthony at his Texas address has been returned to Plaintiffs as undeliverable.

[14] The Court disagrees with Seaoria's calculation of $8,088.25 for two reasons. First, it is not the actual total of the numbers in the column of attorney's fees set forth in her opposition brief. Instead, the correct total of the numbers in that column is $7,931.25. Second, her list of activities is missing legal work performed on February 24, 2005, regarding waiver of service, for which $112.50 in attorney's fees was generated. Adding the correct total of Seaoria's list—$7,931.25—to the additional fees for work regarding waiver of service—$112.50—equals the Court's total of $8,043.75. *See* Seaoria's Opp'n, Ex. B.

9

Case No. C 04-04968 JF
ORDER (1) GRANTING PLAINTIFFS' MOTION TO DEPOSIT BENEFITS WITH THE COURT, (2) GRANTING PLAINTIFFS' MOTION FOR DISCHARGE OF STAKEHOLDER IN INTERPLEADER ACTION, AND (3) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS
(JFLC1)

of Plaintiffs' attorney's fees and costs, and well over half of these fees were generated by work relating to Plaintiffs' ex parte application for service by publication alone. The facts presented with respect to Michael-Anthony suggest that, at best, he simply failed to notify Plaintiffs of a new address after submitting his "Distribution Request Form" and, at worst, he intentionally avoided service of process for several months. Whatever the case, Michael-Anthony's actions clearly have increased the costs of this action considerably, and he has not provided any explanation to the Court for his apparent elusiveness. Accordingly, the Court finds it most equitable to assess a portion of Plaintiffs' attorney's fees and costs against Michael-Anthony himself rather than against the interpleaded fund.[15]

      Seaoria's second argument in opposition to assessing the full amount of Plaintiffs' attorney's fees and costs against the interpleaded fund is that Plaintiffs themselves are partially responsible for the existence of competing claims to Decedent's benefits, which have made this interpleader action necessary. According to Seaoria, had Plaintiffs verified the validity—or, more accurately, the invalidity—of Decedent's attempted beneficiary designation on his enrollment form before contacting Decedent's children, none of them would have filed claims to the benefits, and this controversy would not have arisen. Counsel for David, Gabrielle, Paul, Paula, and Tomica made a similar argument at the hearing, suggesting that Plaintiffs are not entitled to all of their attorney's fees and costs since they are partially at fault for not having obtained the proper signatures on Decedent's beneficiary designations in the first place. While it certainly is true that some confusion could have been avoided had Plaintiffs noticed the defects in Decedent's attempted beneficiary designations earlier—either at the time he made them or when

---

[15] The Court declines to assess any portion of Plaintiffs' attorney's fees and costs against any of Decedent's other children individually solely on the basis of Seaoria's conjecture that they are acting in concert with one another or that they could have persuaded Michael-Anthony to accept service of process.

10

Case No. C 04-04968 JF
ORDER (1) GRANTING PLAINTIFFS' MOTION TO DEPOSIT BENEFITS WITH THE COURT, (2) GRANTING PLAINTIFFS' MOTION FOR DISCHARGE OF STAKEHOLDER IN INTERPLEADER ACTION, AND (3) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS
(JFLC1)

Plaintiffs were preparing to distribute his benefits after his death[16]—the Court is not persuaded that Plaintiffs have acted improperly in naming all potential beneficiaries of Decedent's benefits as defendants in this interpleader action such that the attorney's fees and costs that the Court otherwise would award to Plaintiffs should be reduced on this ground. Indeed, even knowing, as they admittedly do now, of the alleged deficiencies in Decedent's attempted beneficiary designations under the terms of the Plan, all Defendants continue to assert their rights to the benefits—a state of affairs that only serves to validate Plaintiffs' perceived need for an interpleader action,[17] as well as the rationales for awarding disinterested stakeholders their reasonable attorney's fees and costs.

In light of the foregoing discussion, the Court concludes that Plaintiffs are entitled to the full amount of their attorney's fees and costs as requested in their motion—$16,086.21—as it appears that such fees and costs were incurred reasonably and in good faith in the prosecution of this interpleader action. However, because of the important policy interest in preserving the interpleaded fund for the party or parties ultimately deemed to be entitled to it[18] and because a substantial portion of Plaintiffs' fees and costs appear to be attributable to the actions of a single Defendant—Michael-Anthony—the Court will deny Plaintiffs' request that their award be recovered completely from Decedent's Plan benefits. Instead, $8,148.75 will be charged against Michael-Anthony, and the remaining $7,937.46 will be assessed against the interpleaded fund. Contrary to Seaoria's assertion, there is no reason to defer ruling on Plaintiffs' motion for

---

[16] The Court notes that Defendants have presented no evidence that Plaintiffs were under such an obligation. The Court also acknowledges Plaintiffs' argument that it was in fact Decedent's failure to comply with the Plan's spousal-consent requirements that gave rise to Defendants' competing claims.

[17] At this stage of the proceedings, the Court need not address the legal theories suggested by Plaintiffs that could serve to validate Decedent's attempted beneficiary designations despite their noncompliance with the terms of the Plan.

[18] The Court has taken into consideration the fact that, based on the latest figures provided, the total award sought by Plaintiffs constitutes more than twelve percent of Decedent's benefits under the Plan.

11

Case No. C 04-04968 JF
ORDER (1) GRANTING PLAINTIFFS' MOTION TO DEPOSIT BENEFITS WITH THE COURT, (2) GRANTING PLAINTIFFS' MOTION FOR DISCHARGE OF STAKEHOLDER IN INTERPLEADER ACTION, AND (3) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS
(JFLC1)

attorney's fees and costs until after the Court adjudicates Defendants' rights to the benefits. Should Seaoria eventually prevail in her claim to the benefits, the Court has the equitable power to order the losing claimants to compensate the interpleaded fund for any unfair burden they may have placed on the fund as a result of their actions in this lawsuit and the events leading up to it.

### III. ORDER

Good cause therefore appearing, IT IS HEREBY ORDERED that (1) Plaintiffs' motion to deposit Decedent's Plan benefits in the Court's registry is GRANTED, (2) Plaintiffs' motion for discharge from further liability and for a permanent injunction is GRANTED, and (3) Plaintiffs' motion for attorney's fees and costs is GRANTED IN PART and DENIED IN PART. Counsel for Plaintiffs is directed to prepare and submit an appropriate permanent injunction order. Moreover, the parties shall appear for their initial case management conference on July 8, 2005, at 10:30 a.m.

DATED: June 9, 2005

/s/ (electronic signature authorized)
JEREMY FOGEL
United States District Judge

12

Case No. C 04-04968 JF
ORDER (1) GRANTING PLAINTIFFS' MOTION TO DEPOSIT BENEFITS WITH THE COURT, (2) GRANTING PLAINTIFFS' MOTION FOR DISCHARGE OF STAKEHOLDER IN INTERPLEADER ACTION, AND (3) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS
(JFLC1)

This Order has been served upon the following persons:

R. Bradford Huss          bhuss@truckerhuss.com

Clarissa A. Kang          ckang@truckerhuss.com

Jonathan Marc Kaplan      jonnymkap@aol.com

Karen Elaine Phillips     kphillips@truckerhuss.com

Robert Frank Schwartz     rschwartz@truckerhuss.com

Loren Nizinski
Law Offices of Loren Nizinski
14622 Victory Boulevard, 2nd Floor
Van Nuys, CA 91411

13

Case No. C 04-04968 JF
ORDER (1) GRANTING PLAINTIFFS' MOTION TO DEPOSIT BENEFITS WITH THE COURT, (2) GRANTING PLAINTIFFS' MOTION FOR DISCHARGE OF STAKEHOLDER IN INTERPLEADER ACTION, AND (3) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS
(JFLC1)